FILED
JUN 19 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

April 2018 Grand Jury

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

CESAR DALEO,

    Defendant.

Case No. 18 CR 2968 GPC

I N D I C T M E N T

Title 18, U.S.C., Sec. 371- Conspiracy; Title 18, U.S.C., Sec. 545 - Smuggling/Importation Contrary to Law; Title 16, U.S.C., Secs. 3372(a)(2)(A) and 3373(d)(1)(A) - Unlawful Importation of Wildlife; Title 18, U.S.C., Sec. 2 - Aiding and Abetting; Title 18, U.S.C, Secs. 982(a)(2)(B) and (b), and 981(a)(1)(C), Title 28, U.S.C., Sec. 2461, and Title 16, U.S.C., Sec. 3374 - Criminal Forfeiture

The grand jury charges, at all times relevant:

**INTRODUCTORY ALLEGATIONS**

1. The Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES) was an international agreement signed by 183 nations and implemented in 1975, which restricted the international trade and transportation of threatened and endangered species. Both Mexico and the United States were signatories to CITES. In the United States, trade in CITES species was regulated pursuant to the Endangered Species Act, 16 U.S.C. §§ 1538 and 1540, and its implementing regulations.

MKP:nlv:San Diego
6/19/18

2. *Isostichopus fuscus* was a type of sea cucumber found in the Eastern Pacific from Mexico to Ecuador. *Isostichopus fuscus* had been listed on Appendix III of CITES as protected since 2003.

3. All sea horses fell within the genus *Hippocampus*. All members of the genus *Hippocampus* had been listed on Appendix II of CITES as threatened since 2004.

4. Federal regulations required that any specimen listed on Appendix II and III to CITES must be accompanied upon importation into the United States by a CITES export permit and a CITES certificate from the country of origin. 50 C.F.R. §§ 23.20 and 23.27.

5. An import/export license from the U.S. Fish and Wildlife Service was required of persons engaging in business as an importer or exporter of wildlife, pursuant to 16 U.S.C. § 1538(d)(1) and 50 C.F.R. § 14.91. Federal regulations further required that a declaration form be presented to FWS with each import, pursuant to 50 C.F.R. § 14.61, providing information on the species, quantity, nature and intended destination.

6. The Federal Penal Code of Mexico, Section 420, subsection IV, prohibited activities conducted for the purpose of trafficking or possessing specimens, the product or byproducts of a species of flora or fauna, whether land or banned aquatic wildlife, that are considered endemic, threatened, or in danger, subject to special protection or regulated by any international treaty signed by Mexico, such as CITES.

7. The General Wildlife law of Mexico, Section 65, provided that any party wishing to export a specimen or parts of a specimen of a species covered by CITES must request a CITES permit from Mexico, providing information about the specimen, its destination and the reason for the movement. NOM-SEMARNET-059-2010 codified the special protection

given to *Isostichopus fuscus* under Mexican law, requiring that such a CITES export permit be submitted to Mexican authorities at the time of export.

8. To obtain Customs clearance of wildlife imported into the United States, an importer was required to provide all permits or other documents required by the laws or regulation of any foreign country, 50 C.F.R. §14.52(c)(3), including the CITES export permit issued by Mexico.

9. The General Law on Sustainable Fishing and Aquaculture ("the SFA") established the basic regulatory scheme for fishing within the jurisdiction of Mexico. Pursuant to Articles 40 and 41 of the SFA, a license and/or a permit was required for commercial fishing in Mexico. Article 75 of the SFA required that the lawful origin of fisheries products be demonstrated by means of an arrival, harvest, production, or collection notice or an import permit and required that all fiscal vouchers issued for the marketing of fisheries products include the pertinent permit or license number. Article 76 of the SFA further required a fisheries waybill for the transportation of fisheries products. Pursuant to Article 132 of the SFA, it was a violation of law to fail to demonstrate the lawful origin of fisheries products.

10. It was a further violation of Article 132 of the SFA to harvest, possess, transport, or sell a species out of season, or of less than the minimum established size and weight, or to harvest a species in excess of permit limits or without a proper license or permit.

11. In addition to the SFA, Mexico enacted the Regulations of the Fisheries Law ("the Regulations"). Article 10 of the Regulations required that the legal origin of fisheries products be certified by the notice of arrival, harvest, production or collection. Article 13 of the Regulations provided that the original sales invoice for fisheries

products must bear the number associated with the notice of arrival, harvest, production or collection, as well as a description of the product, and all subsequent invoices must bear the number of the invoice from which it derived, so that all fisheries products sold in Mexico could be traced to their lawful origins.

### Count 1

### Conspiracy - 18 U.S.C. § 371

12. Paragraphs 1 through 11 of the Introductory Allegations are incorporated herein as if set forth in full.

13. Beginning at a date unknown to the grand jury but at least as early as October 24, 2014, and continuing up to and including on or about September 26, 2016, within the Southern District of California and elsewhere, defendant CESAR DALEO knowingly and intentionally conspired with Jesus Padilla (charged elsewhere) and others to commit offenses against the laws of the United States, to wit:

    a. to knowingly and willfully, with the intent to defraud the United States, smuggle and clandestinely introduce merchandise into the United States which should have been invoiced, in violation of Title 18, United States Code, Section 545;

    b. to knowingly import merchandise, contrary to law, in violation of Title 18, United States Code, Section 545; and

    c. to knowingly import in interstate or foreign commerce wildlife taken, possessed, transported, and sold in violation of foreign law, knowing that the wildlife had been taken, possessed, transported and sold in violation of, and in a manner unlawful under, an underlying foreign law, treaty or regulation, in violation of Title 16, United States Code, Sections 3372 and 3373.

14. It was a method and means of the conspiracy that defendant CESAR DALEO would obtain packages of sea cucumbers (*Isostichopus fuscus*) and sea horses (*Hippocampus sp.*) from individuals in Mexico and make arrangements to illegally import them into the United States. Defendant Daleo would deliver the sea cucumbers and/or sea horses to Jesus Padilla and others in Mexico to smuggle into the United States and would also smuggle them into the United States by himself.

15. It was a further method and means of the conspiracy that defendant CESAR DALEO would meet Jesus Padilla and other couriers in San Diego, California to receive the sea cucumbers and sea horses that had been illegally imported and pay the couriers.

16. It was a further method and means of the conspiracy that defendant CESAR DALEO would deliver the packages of illegally imported sea cucumbers and sea horses to others within the United States in return for payment of $300 to $500 per week.

### Overt Acts

17. In furtherance of the conspiracy, the following overt acts were committed within the Southern District of California and elsewhere:

    a. On or about October 24, 2014, in San Diego, California, Shanna Fisher (charged elsewhere) drove a vehicle containing approximately 61 lbs. of sea cucumber (*Isostichopus fuscus*) into the United States from Mexico.

    b. On or about October 27, 2014, in San Diego, defendant CESAR DALEO provided a false invoice to Jesus Padilla to supply to U.S. government investigators in an attempt to falsely demonstrate the lawful origin of the sea cucumber imported by Shana Fisher.

5

c. On or about November 3, 2014, in San Diego, defendant CESAR DALEO drove a vehicle containing approximately 6 kg of dried sea cucumber (*Isostichopus fuscus*) into the United States from Mexico.

d. On or about December 1, 2014, in San Diego, defendant CESAR DALEO drove a vehicle containing 9 kg of dried sea cucumber (*Isostichopus fuscus*) and 3 kg of seahorses (*Hippocampus sp.*) into the United States from Mexico.

e. On or about March 11, 2015, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

f. On or about April 7, 2015, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

g. On or about May 4, 2015, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

h. On or about September 30, 2015, in San Diego, Jesus Padilla drove a vehicle containing approximately 6 lbs. of sea cucumber (*Isostichopus fuscus*) into the United States from Mexico.

i. On or about November 16, 2015, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

j. On or about December 2, 2015, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that

1 he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

    k.   On or about January 4, 2015, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

    l.   On or about February 4, 2016, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

    m.   On or about March 15, 2016, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

    n.   On or about April 5, 2016, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

    o.   On or about May 5, 2016, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

    p.   On or about June 15, 2016, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

    q.   On or about July 14, 2016, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that

he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

  r. On or about August 9, 2016, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO.

  s. On or about September 30, 2016, in San Diego, Jesus Padilla spoke by telephone with defendant CESAR DALEO and notified DALEO that he had 10 to 15 2 kg bags of sea cucumbers (*Isostichopus fuscus*) to deliver which Padilla had illegally imported at the request of DALEO. All in violation of Title 18, United States Code, Section 371.

### Counts 2-5
### Importation Contrary to Law - 18 U.S.C. § 545

17. Paragraphs 1 through 5 of the Introductory Allegations are incorporated herein as if set forth in full herein.

18. On or about the dates set forth below in Column A, within the Southern District of California, defendant CESAR DALEO knowingly imported merchandise into the United States, that is, a commercial quantity of sea cucumber (*Isostichopus fuscus*), contrary to law, in that:

  a. the defendant knowingly imported the sea cucumbers contrary to the provisions of CITES as the sea cucumbers were not accompanied by an export permit and certificate of origin issued by the government of Mexico under CITES, in violation of Title 16, United States Code, Sections 1538(c) and 1540(b)(1) and Title 50, Code of Federal Regulations, Section 23.20;

  b. the defendant knowingly engaged in business as an importer of wildlife without having first obtained a permit from the

U.S. Fish and Wildlife Service, in violation of Title 16, United States Code, Sections 1538(d)(1)(A) and 1540(b)(1) and Title 50, Code of Federal Regulations, Section 14.91; and

       c.   the defendant knowingly failed to file a declaration form 3-177 with the U.S. Fish and Wildlife Service at the time of importation, in violation of Title 16, United States Code, Sections 1538(e) and 1540(b)(1) and Title 50, Code of Federal Regulations, Section 14.61;

| Count | Column A (Date) |
|---|---|
| 2 | October 24, 2014 |
| 3 | November 3, 2014 |
| 4 | December 1, 2014 |
| 5 | September 30, 2015 |

All in violation of Title 18, United States Code, Sections 545 and 2.

### Count 6

**Smuggling - 18 U.S.C. § 545**

20.   On or about December 1, 2014, within the Southern District of California, defendant CESAR DALEO knowingly and willfully, with the intent to defraud the United States, smuggled and clandestinely introduced into the United States merchandise which should have been invoiced, that is, approximately 9 kg of sea cucumber (*Isostichopus fuscus*) and 3 kg of seahorses (*Hippocampus sp.*), in violation of Title 18, United States Code, Sections 545 and 2.

### Counts 7-8

**Unlawful Importation of Wildlife - 16 U.S.C. § 3372 and 3373**

21.   Paragraphs 1 through 11 of the Introductory Allegations are incorporated herein as if set forth in full herein.

22.   On or about the dates set forth below in Column A, within the Southern District of California, defendant CESAR DALEO knowingly

imported in interstate and foreign commerce wildlife, that is, sea cucumber (*Isostichopus fuscus*), taken, possessed, transported, and sold in violation of foreign law, knowing that the wildlife had been taken, possessed, transported, and sold in violation of, and in a manner unlawful under, the laws of Mexico, that is: the Federal Penal Code of Mexico, Section 420, subsection IV; the General Wildlife law of Mexico, Section 65; NOM-SEMARNET-059-2010; the General Law on Sustainable Fishing and Aquaculture, Articles 40, 41, 75, 76 and 132 and Articles 10 and 13 of the Regulations of the laws of Fisheries of Mexico;

| Count | Column A (Date) |
|---|---|
| 7 | October 24, 2014 |
| 8 | December 1, 2015 |

All in violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(A), and Title 18, United States Code, Section 2.

Forfeiture Allegation

23. Paragraphs 1 through 11 of the Introductory Allegations are incorporated herein as if set forth in full herein.

24. Upon conviction for the offense charged in Count 1 of this Indictment, defendant CESAR DALEO shall forfeit to the United States all property which constitutes or is derived from proceeds obtained directly or indirectly, as a result of such violation, including but not limited to $46,800 in U.S. currency, in violation of Title 18, United States Code, Section 982(a)(2)(B).

25. If any of the above-described forfeitable property, as a result of any act or omission of defendant DALEO:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

|   |   |
|---|---|
| c. | has been placed beyond the jurisdiction of the Court; |
| d. | has been substantially diminished in value; or |
| e. | has been commingled with other property which cannot be subdivided without difficulty; |

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of defendant up to the value of the forfeitable property alleged above as being subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and (b).

26. Upon conviction for the offenses charged in Counts 7 and 8 of this Indictment, defendant DALEO shall forfeit to the United States approximately 39 kg of sea cucumber and 3 kg of sea horses, pursuant to Title 16, United States Code, Section 3374(a)(1).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461, and Title 16, United States Code, Section 3374.

DATED: June 19, 2018.

A TRUE BILL:

_____
Foreperson

ADAM L. BRAVERMAN
United States Attorney

By: _____
MELANIE K. PIERSON
Assistant U.S. Attorney